IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JOSEPH MARK,

               Plaintiff,

    vs.

JAMES MASTELLER, District Court Judge
of the Fourth Nebraska Judicial district,
Douglas County, Nebraska; ANTHONY
CLOWE, County Attorney, Douglas County
Nebraska; THE UNNAMED APPEALS
COURT JUDGE, Nebraska Appellate Court,
responsible for the summary dismissal of
Nebraska Appellate Court Case A-23-247;
RICK SCHREINER, District Court Judge of
the First Nebraska Judicial district,
Johnson/Gage Counties, Nebraska; THE
UNNAMED APPEALS COURT JUDGE,
NEBRASKA APPELLATE COURT,
responsible for the summary judgment of
Nebraska Appellate court case A-24-346;
MIKE HILGERS, Attorney General of The
State of Nebraska; ELIZABETH
ARTERBERRY, Director of Mental Health
Nebraska Department of Correctional
Services ( " NDCS "); LESLIE
CAVANAUGH, Trial Counsel, of the
Douglas County Nebraska Public Defender's
Office; MOLLY KEANE, Trial prosecutor;
formerly of the Douglas County Prosecutor's
Office, and who is now a District Court
Judge in the 4th Nebraska Judicial District;
SARGENT BENJAMIN, NDCS Staff at
TSCI; and CASE MANAGER BINNICK,
NDCS Staff at TSCI;

               Defendants.

8:25CV745

MEMORANDUM AND
ORDER

## I.  INTRODUCTION

This matter is before the Court on Plaintiff Joseph Mark's complaint filed on December 31, 2025, Filing No. 1, and supplemented on February 5, 2026, Filing 9. On February 11, 2026, Plaintiff voluntarily dismissed certain defendants and claims. Filing 12. Plaintiff moved to correct format issues, Filing 10, and for appointment of counsel, tort relief, and an injunction. Filing 11. Plaintiff is an inmate at the Nebraska State Penitentiary within the Nebraska Department of Corrections (NDCS) and was granted leave to proceed in forma pauperis. Filing 8. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis and prisoner complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e); 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III. SUMMARY OF COMPLAINT

### A. Parties and Claims

Plaintiff's initial complaint and its supplement, Filings 1 and 9, (hereafter "consolidated initial complaint") sued Sergeant Benjamin and Case Manager Binnick, employees at Tecumseh State Correctional Institution (TSCI) (hereafter TSCI defendants), and Nebraska District Court Judges James Masteller and Rick Schreiner; unnamed Nebraska Court of Appeals Judges; Douglas County Attorney Anthony Clowe and prosecutor Molly Keane; Leslie Cavanaugh, from the Douglas County Public Defender's Office; Nebraska Attorney General Mike Hilgers; and NDCS Director of Mental Health Elizabeth Arterberry.

Filing 12 narrows the scope of Plaintiff's parties and claims. Plaintiff voluntarily dismisses Cavanaugh and Keane, Filing 12 at 5, and he "withdraws his request for relief regarding the validity of his conviction and sentencing." Filing 12 at 1. He limits his lawsuit to challenging state "postconviction violations" that "constituted state impediments to the timely filing of his

3

federal habeas action." Filing 12 at 1. He seeks federal relief "to more directly challenge . . . state court determinations on state law questions, " Filing 12 at 2, explaining:

> Plaintiff wishes to make clear that his goal is to fully examine and adjudicate the due process violations of both PCR initial review, and the question of "appeal timeliness" for "The imprisoned" insofar as his case is concerned. The ultimate end goal being to obtain the requested relief of his Federal Habeas action being allowed to be restarted or reinstated.

Filing 12 at 2.

As to all defendants, he "is now seeking only injunctive and declaratory relief, and he amends his complaint so that each defendant is being sued in their official capacity, under the 'ex parte Young Doctrine' (28 S.Ct.441)." Filing 12 at 3. Plaintiff expressly "withdraws his requests for any and all compensatory and punitive monetary award." Filing 12 at 2-3, 6.

To summarize, Plaintiff now sues Nebraska District Judges Masteller and Schreiner, unnamed judges of the Nebraska Court of Appeals, Douglas County Attorney Anthony Clowe, Nebraska Attorney General Mike Hilgers, NDCS Director of Mental Health, Elizabeth Arterberry, (hereafter the "postconviction review" defendants), and the TSCI defendants, all in their official capacities only, and he seeks only prospective relief as to proceedings and conduct that occurred after his conviction and sentencing.

### B. Allegations Against Benjamin and Binnick

Plaintiff's initial complaint was filed on December 31, 2025, one week before his claims against the TSCI defendants arose. So, the initial complaint contains no allegations against these defendants.

The supplement filed on February 5, 2026, alleges that shortly after Plaintiff filed this lawsuit, the TSCI staff were aware of it. Benjamin was promptly directed to perform a search of Plaintiff's cell. The cell had been

searched only a few days prior, and typically cells are searched only twice per month. Binnick conducted the search and while doing so, he violently pulled Plaintiff's television off his desk. Binnick stated he seized the television because it had a lamp taped to the left side, and it was therefore an unauthorized "altered" item. Plaintiff had possessed this television/lamp combination for years without any claim that it violated prison regulations. When Plaintiff asked when it would be returned, Binnick admitted it was not actually unauthorized, but Plaintiff would nonetheless need to go through a weeks-long process to get it returned. When Plaintiff stated the process itself is punishment, Binnick smirked and snickered. The television was returned on January 28, 2026, but its coaxial cable connection and screen were damaged, rendering it nonoperational.

Binnick also allegedly denied or delayed Plaintiff's use of the TSCI law library by failing to promptly respond to Plaintiff's inmate requests to use the library and/or failing to timely deliver his responses to Plaintiff. Filing 9 at 4-7.

Plaintiff alleges the unusual timing of his cell search, destruction of his television, and limits on access to the law library at TSCI were in retaliation for filing this lawsuit. Sometime between February 3, 2026, and February 9, 2026, Plaintiff was transferred from TSCI to the Nebraska State Penitentiary, where he is currently confined. Filing 9 at 10; Filing 10 at 3.

**C. Allegations against Nebraska Judges and Attorney General, Douglas County Attorney, and NDCS Director of Mental Health**

In August of 2019, Plaintiff was charged with sexual assault in two criminal cases filed in the District Court of Douglas County, Nebraska. *Mark*

5

*v. Jeffreys,* 8:24-cv-00375-JMG-PRSE, Filing 19-6 at 1–2; Filing 19-8 at 2–3, 46–49.[1] Counsel was appointed to represent Plaintiff.

Plaintiff alleges his trial counsel intentionally provided deficient performance because of her bias against those accused of sexual crimes. Filing 1 at 47.[2] He claims his trial counsel and the prosecutor were good friends, and they conspired to make sure he was imprisoned. Filing 1 at 69, 77. Plaintiff alleges Judge Masteller was brought into this conspiracy at the pretrial conference. At that hearing, counsel advised the court of the status of plea negotiations. Plaintiff did not attend the pretrial conference and was not aware of the hearing until it was over. Filing 1 at 70.

The two criminal cases were consolidated, and the parties reached a global plea agreement. *Mark v. Jeffreys,* 8:24-cv-00375-JMG-PRSE, Filing 19-6 at 2. Plaintiff entered guilty pleas, and in July of 2020, Judge Masteller sentenced Plaintiff to a total of 80 to 110 years in prison. *Id.* at Filing 19-8 at 9–11, 58–61.

Plaintiff unsuccessfully appealed his conviction and sentence. *See State v. Mark*, No. A-21-125, 2021 WL 4851273 (Neb. Ct. App. Oct. 19, 2021).

After sentencing, Plaintiff was initially confined at the Diagnostic and Evaluation Center (D&E) (now known as the Reception and Treatment Center (RTC)), for 16 months. Filing 1 at 37. At the outset, Plaintiff requested a full mental health evaluation. This request was denied because such evaluations were not available at RTC. He was, however, prescribed Zoloft for his mental

---

[1] The Court can sua sponte take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981).

[2] Pages 47 through 80 of the initial complaint discuss Plaintiff's claims of ineffective assistance of trial counsel. These pages were read to understand the context of Plaintiff's claims, but they are not thoroughly discussed herein because for this litigation, Plaintiff has now voluntarily dismissed any claims against his trial counsel.

health concerns and advised that he could renew his request for a mental health evaluation once he reached his assigned housing. Filing 1 at 38.

In November of 2021, (after Plaintiff's conviction and sentence were affirmed on direct appeal), Plaintiff was transferred to TSCI. He immediately requested a full mental health evaluation. Plaintiff had severe anxiety. He was seen by a psychiatrist via TeleHealth, and his Zoloft prescription was increased. Filing 1 at 39.

In February 2022, Plaintiff again asked for a full mental health evaluation. He was advised his evaluation was delayed due to a backlog of such requests at TSCI. On March 24, 2022, he filed an inmate request stating "I am waiting for my full mental health evaluation so I can progress my legal case." Filing 1 at 43. In response to his inmate request, he was told "Mental Health does not provide evaluations for legal purposes." Filing 1 at 43-44. Plaintiff was told he needed to have his attorney request a full evaluation, but by then, Plaintiff was no longer represented by counsel. Filing 1 at 42.

TSCI's in-house mental health department initiated mental health screening on April 1, 2022. During his meeting with the in-house psychiatrist that day, Plaintiff was told that he was diagnosed with "Generalized Anxiety Disorder" (GAD) by the TeleHealth psychiatrist. Filing 1 at 40. The scores from Plaintiff's initial screening, which are used to decide if further testing is needed, were available a month or so later. Filing 1 at 40, 43-44. Although Plaintiff was told those test results would be disclosed to him, he never met with the in-house psychiatrist thereafter and was not told the results of his screening. Filing 1 at 45. Plaintiff believes he has Obsessive Compulsive Disorder (OCD), and a long-time friend who is a mental health professional believes Plaintiff may have Complex Post Traumatic Stress Disorder (C-PTSD). Filing 1 at 45.

7

Plaintiff sues the NDCS Director of Mental Health, currently Elizabeth Atterberry, but acknowledges someone else may have been in that position at the time of the alleged events. Filing 1 at 36. Plaintiff alleges mental health care was initiated, then denied after upper management realized the mental health evaluation may be used as "legal ammunition" to set aside his conviction. Filing 1 at 37, 42. Plaintiff claims the NDCS Director of Mental Health and the Nebraska Attorney General conspired to conceal Plaintiff's mental health evaluation report. Filing 1 at 42.

On May 27, 2022, Plaintiff filed his motion for postconviction relief based on the new GAD diagnosis. Immediately after it was filed, Judge Masteller ordered the prosecutor to file a written response to the motion within 45 days. Filing 1 at 6. Plaintiff claims Judge Masteller was required to first perform an initial review of Plaintiff's motion without any input from the prosecutor. Filing 1 at 7-8. He argues that by ordering a response to his motion prior to initial review, the judge effectively allowed the prosecutor to perform the initial review, Filing 1 at 6, expanded judicial review beyond the files and records of the criminal case, Filing 1 at 9, and introduced the prosecutor's opinion as evidence from outside the record. Filing 1 at 10-11. Plaintiff claims Judge Masteller used a procedure he "made up. . . on the fly, exercising discretion where he had none." Filing 1 at 12.

Plaintiff had unsuccessfully raised a claim of ineffective trial counsel on direct appeal. *Mark,* 2021 WL 4851273, at *6. In the postconviction proceedings, he again claimed his trial counsel should have ordered a mental health examination (as Plaintiff repeatedly requested). In response, Clowe argued the issue of ineffective trial counsel for failing to order a mental health evaluation was already adjudicated on appeal and denied. *See id.* (on direct appeal, Plaintiff claimed "trial counsel was ineffective in failing to obtain a

psychosexual or mental health evaluation prior to sentencing"). Plaintiff alleges that during the postconviction proceeding before Judge Masteller, Clowe repeatedly misrepresented that any evidence of Plaintiff's mental state was not new evidence despite Plaintiff's post-appeal diagnosis of GAD. Filing 1 at 15-17.

Plaintiff filed a rebuttal brief to respond to the prosecutor's argument on August 22, 2022, and he moved to recuse Judge Masteller on December 8, 2022. Filing 1 at 12-13. The judge held oral arguments on the postconviction motion and motion to recuse. Plaintiff alleges his due process rights were violated because he had no prior notice of the hearing and was unable to prepare, and because an evidentiary hearing was not held on the postconviction motion. Filing 1 at 13

The motion to recuse and the motion for postconviction relief were denied. Plaintiff alleges Judge Masteller followed the reasoning argued by Crowe (the judge's former colleague in the County Attorney's Office) and issued a nine-page, well-documented, and fully-cited opinion and order only four hours after the hearing. Due to the speed of issuing the opinion and its analysis, Plaintiff surmises Crowe provided a draft written opinion to Judge Masteller before the hearing, thereby allowing the judge to thereafter make only minor revisions and quickly issue his signed written opinion. Plaintiff claims the oral argument was a sham because the outcome of the postconviction motion hearing was pre-determined. Filing 1 at 17-18.[3]

---

[3] Citing a footnote in Judge Masteller's opinion, Plaintiff also alleges Judge Masteller disregarded Plaintiff's rebuttal brief because it was not the operative pleading. Filing 1 at 11. However, Plaintiff misinterprets or misstates the record. The judge's opinion notes that while he "considered the Responses filed by both the State and the Defendant," "[t]he defendant's verified motion for postconviction relief is the operative filing before the district court in considering whether to grant an evidentiary hearing." *Mark v. Jeffreys,* 8:24-cv-00375-JMG-PRSE, Filing 19-10 at 4, n. 1. The footnote does not state Plaintiff's rebuttal arguments were ignored.

Plaintiff appealed the denial of his motions for postconviction relief and recusal. He requested a transcript and bill of exceptions for appellate review. Filing 1 at 13. Plaintiff alleges two hearing notices (for the motion for postconviction relief and the motion to recuse) were not timely filed as part of his requested appellate record, so he filed a motion to compel Judge Masteller's compliance. The next business day, Judge Masteller ordered a hearing transcript, and the Nebraska Court of Appeals denied Plaintiff's motion to compel. Plaintiff alleges Judge Masteller could not have known about the motion to compel filed with the Nebraska Court of Appeals unless he received an ex parte notice from either the State Attorney "to 'get ahead of' an adverse ruling," Filing 1 at 14, or from the Nebraska Court of Appeals as a "professional courtesy" to help cover the judge's malfeasance. Filing 1 at 15. Plaintiff alleges the Nebraska Attorney General and the Nebraska Court of Appeals are therefore part of the conspiracy to deny his rights.

Plaintiff appealed the denial of his postconviction motion on March 27, 2023. Citing *Cole v. Kilgore*, 489 N.W.2d 843 (Neb. 1992), an unnamed Nebraska Court of Appeals judge dismissed the appeal as untimely. Plaintiff alleges the Nebraska Court of Appeals engaged in "judicial activism" and violated the clear language of Nebraska procedural law by finding Plaintiff's postconviction appeal was untimely, and by concluding the untimeliness was not explained and excused by equitable tolling. Filing 1 at 19-22, 26-29. Plaintiff alleges his right to federal habeas review was denied because the Nebraska Court of Appeals violated his due process rights. Filing 1 at 23.

After Plaintiff's postconviction appeal was denied, he filed a new motion for postconviction relief. It was denied as successive and untimely.[4] Plaintiff

---

[4] Judge Masteller also denied the motion because it raised no grounds that did not exist when the prior postconviction motion was filed. *Mark v. Jeffreys*, 8:24-cv-00375-JMG-PRSE, Filing 19-10 at 35-36.

alleges the Nebraska Postconviction Act (NPA), Neb. Rev. Stat. §§ 29-3001 to 3005a violates various sections of the Nebraska Constitution by limiting successive motions and imposing the statute of limitations for filing motions for postconviction relief codified at Neb. Rev. Stat 29-3001(4). Filing 1 at 24.

Plaintiff filed a state habeas petition in the Johnson County District Court. Judge Schreiner dismissed the application that same day, ruling Plaintiff failed to raise a valid claim that his convictions and sentences were void for lack of jurisdiction. Plaintiff claims he clearly raised these issues, indicating the judge did not bother to read his application before dismissing it. Filing 1 at 30-31. Plaintiff alleges Judge Schreiner has been co-opted by the Nebraska Attorney General's Office as part of an effort to keep inmates in jail. Filing 1 at 34.

Plaintiff appealed the denial of his petition for state habeas relief. An unnamed Nebraska Court of Appeals judge summarily denied the appeal on August 6, 2024, stating the court that imposed his criminal sentence "had jurisdiction of offense and person of defendant and sentence was within power of court to impose."[5] Plaintiff alleges the Nebraska Court of Appeals "rubber-stamped" the lower court's dismissal of the state habeas petition, allegedly shielding Judge Schreiner's malfeasance by endorsing a plainly wrong interpretation of Nebraska law. Filing 1 at 32-35.

Plaintiff alleges there is "a conspiracy and systemic culture of discrimination within the Judiciary of the State of Nebraska to violate his civil rights and indeed the civil rights of all inmates" in NDCS custody. Filing 1 at 2. He alleges the judiciary acts as a wing of the Nebraska Attorney General's Office and ensures defense counsel can "phone it in" when representing

---

[5] The Court takes judicial notice of the state court records. *See Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (court may take judicial notice of public records). Nebraska's judicial records may be retrieved on-line through the JUSTICE site, https://www.nebraska.gov/justice/case.cgi.

criminal defendants, and prosecutors can commit errors or abusively pursue prosecution, all without consequences. Filing 1 at 2, 85.[6] He further alleges Nebraska's postconviction review statues and proceedings are "used as a tool of the State," supported and aided by the Nebraska judiciary, "to systemically suppress the civil rights of inmates." Filing 1 at 29.

## IV. DISCUSSION

Plaintiff's claims against the postconviction review defendants were raised in his initial complaint, Filing 1. The claims against the TSCI defendants were raised in Filing 9. The Court could dismiss Plaintiff's claims in Filing 1 as replaced by the Filing 9 "Amended Complaint," or it could dismiss the claims in Filing 9 as misjoined with the claims in Filing 1. But in the interest of judicial economy, the Court will address both filings as the Plaintiff's consolidated initial complaint.

### A. Claims against the Postconviction Review Defendants

Plaintiff alleges the postconviction review defendants, in their official capacities, conspired to deny his right to due process. He requests an order that vacates the Nebraska courts' rulings in his state postconviction and habeas cases, declares the NPA violates the Due Process Clause, on its face and as applied to his case, enjoins the postconviction review defendants from further violating his due process rights, and requires NDCS to fully administer Plaintiff's mental health evaluation. Plaintiff asks the Court to find his state postconviction appeal was timely under the state's statute of limitations, and that had due process not been violated by the state court rulings and statutes, his federal habeas action would have been deemed timely filed and considered

---

[6] Pages 1 through 6 of Plaintiff's amendment attached to the initial complaint (Filing 1 at 96-101), and Pages 82 through 92 of the initial complaint were read but are not thoroughly summarized herein because they outline Plaintiff's legal arguments and his personal and legal opinions but not statements of fact relevant to deciding if his complaint states a claim for relief.

12

on the merits. *See* Filing at 4-5. He asks the Court to reopen or reinstate his federal habeas action, *Mark v. Jeffreys,* 8:24-cv-00375-JMG-PRSE. Filing 12 at 2. *See also,* Filing 12 at 4-6.

### 1. Setting Aside the Federal Habeas Judgment

On September 25, 2024, Plaintiff filed a federal habeas petition in *Mark v. Jeffreys,* 8:24-cv-00375-JMG-PRSE. The petition was dismissed with prejudice on September 22, 2025, as barred by the limitations period set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, as codified at 28 U.S.C. § 2244(d)(1). Plaintiff now asks for an order declaring Nebraska's postconviction proceedings were "state impediments" to his ability to timely file the federal habeas petition, and he asks the Court to reopen his federal habeas lawsuit. Filing 1 at 5.

Plaintiff's consolidated initial complaint demands injunctive relief under 42 U.S.C. § 1983 or 42 U.S.C. § 1985. But neither of these statutes affords the remedy of setting aside a prior judgment denying habeas relief.

The court must liberally construe Plaintiff's pro se complaint and disregard his characterization of the legal basis for his claims. The question is whether Plaintiff's request to reopen and re-litigate the prior federal habeas case is a successive petition (thereby requiring circuit approval before it can be considered), or a motion for relief under Rule 60(b) of the Federal Rules of Civil Procedure. Under *Gonzalez v. Crosby,* 545 U.S. 524 (2005),

> [A] Rule 60(b)(6) motion in a § 2254 case is not to be treated as a successive habeas petition if it does not assert, or reassert, claims of error in the movant's state conviction. A motion that, like petitioner's, challenges only the District Court's failure to reach the merits does not warrant such treatment, and can therefore be ruled upon by the District Court without precertification by the Court of Appeals pursuant to § 2244(b)(3).

*Id.*

13

As modified by Plaintiff, (see Filing 12), Plaintiff asks this Court to vacate the judgment in the federal habeas case, but he is not—*in this action*—asking the Court to set aside his underlying conviction and sentence. Filing 12 at 2-3. Plaintiff candidly states he intends to again pursue federal habeas relief if he prevails in this lawsuit. But his current complaint is not transformed into a habeas action even if Plaintiff intends to use it as a gateway for repeating the federal habeas proceedings. *Skinner v. Switzer*, 562 U.S. 521 (2011) (complaint challenging state postconviction requirements for DNA testing under § 1983 was not a habeas claim even though Plaintiff's ultimate aim was to set aside his conviction); *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (holding the inmate filed a § 1983 claim, not a habeas action, where his complaint attacked the state's parole procedures on constitutional grounds, not the denial of parole itself, so he could later challenge denial of parole).

"If neither the [inmate's filings] nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the [Rule 60(b)] motion to proceed as denominated creates no inconsistency with the habeas statute or rules." *Gonzalez,* 545 U.S. at 533. Here, the Court denied Plaintiff's federal habeas petition as untimely under AEDPA's statute of limitations. It did not address the substantive claims raised in Plaintiff's petition, and Plaintiff is currently not seeking to set aside the conviction and sentence. The Court therefore finds Plaintiff's request to set aside the adverse judgment in his federal habeas action is not a successive petition for habeas relief, but rather a request for relief from judgment under Rule 60(b).[7]

Rule 60(b) permits the Court to relieve a party from a final judgment for the following reasons:

---

[7] The Court is aware that if considered a Rule 60(b) motion, the proper defendant is the warden of Plaintiff's current confinement facility. However, since his requested relief will be denied, the Court will address the merits without requiring Plaintiff to amend the complaint to formally name the proper defendant.

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60.

Plaintiff does not argue that the federal habeas judgment is void, (Fed. R. Civ. P. 60(b)(4)), the product of fraud, misconduct, or misrepresentation by the respondent in the federal habeas case, Fed. R. Civ. P. 60(b)(3), or incorrect due to "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), and Plaintiff raises no claims based on newly discovered evidence or a change in substantive law. Fed. R. Civ. P. 60(b)(2). The state postconviction and habeas rulings he challenges, along with Nebraska's statutes and their interpretation, were known by Plaintiff before the federal habeas petition was filed. Liberally construed, Plaintiff alleges the federal habeas judgment must be reopened and relitigated because it is based on erroneous prior state court rulings and this Court must vacate those state judgments. Fed. R. Civ. P. 60(b)(5).

In this § 1983 case, Plaintiff argues that the Nebraska courts' postconviction and habeas rulings and the Nebraska Supreme Court's interpretation of the deadline for filing a postconviction appeal, were erroneous and posed a state impediment to timely filing a federal habeas petition. He claims he is entitled to a "whole new bite at the apple" in challenging his conviction and sentence. Filing 12 at 6.

15

> Plaintiff requests as relief a blanket waiver of the previous Federal Habeas time restrictions, and a "reset" of his right to file for Federal Habeas relief. To that end, Plaintiff requests that this Federal Court declare that the State Court's violations of due process across the board constitute a "state impediment" to his timely filing for Federal Habeas Corpus relief, and allow him to reopen his Federal Habeas process.

Filing 1 at 23.  As explained below, Plaintiff's state impediment argument must fail because he is collaterally estopped from raising it, and even if not estopped, this Court cannot reverse or vacate Nebraska state court rulings.

### a. Collateral Estoppel

Federal habeas petitioners are collaterally estopped from using a lawsuit under 42 U.S.C § 1983 to re-litigate issues that were previously raised and adjudicated in their prior federal habeas case. *Irving v. Dormire*, 586 F.3d 645 (8th Cir. 2009). Collateral estoppel applies when (1) the issue raised in the § 1983 action is identical to the issue previously decided in the habeas case; (2) the prior action resulted in a final adjudication of the issue on the merits; (3) the same person filed the federal habeas and § 1983 cases; and (4) the § 1983 plaintiff was given a full and fair opportunity to be heard on the issue in the federal habeas case. *Irving,* 586 F.3d at 647–48.

Plaintiff was the petitioner in a prior federal habeas case. The habeas action was decided on summary judgment, and Plaintiff was afforded an opportunity to present evidence and argument in support of his claim for relief. The respondent argued the habeas petition was untimely under the AEDPA state of limitations. In response, Plaintiff raised the same "state impediment" arguments he is now raising in this § 1983 case, (*Mark v. Jeffreys,* 8:24-cv-00375-JMG-PRSE, Filing 23), and the Court thoroughly addressed those issues. *Id.*, Filing 30 at 9-16. In the federal habeas case, this Court held:

> Petitioner contends that he faced a state-created impediment to his timely filing of a petition, he is entitled to additional statutory tolling and equitable tolling, and the miscarriage of justice exception applies to excuse any untimely filing of his petition.

16

> Upon careful consideration, the Court finds that no state-created impediment prevented Mark from filing a timely habeas petition, neither equitable tolling nor the miscarriage of justice exception applies, and the petition must be dismissed as untimely.

*Id.* at 4-5. The federal habeas petition was dismissed with prejudice, *id.*, Filing 31, and that judgment was affirmed by the Eighth Circuit Court of Appeals. *Id.,* Filing 38.

Plaintiff unsuccessfully litigated his claim that an erroneous Nebraska Supreme Court interpretation of Nebraska law, and the Nebraska courts' postconviction rulings posed state impediments sufficient to toll AEDPA's statute of limitations. Plaintiff is collaterally estopped from relitigating that claim in this lawsuit. *Dormire*, 586 F.3d at 648-49.

### b. Challenging State Court Rulings

Even assuming Plaintiff's state court impediment argument is not estopped, this Court cannot grant his requested relief. Plaintiff claims his state postconviction appeal should not have been dismissed by the Nebraska Court of Appeals as untimely because, as an incarcerated person, the appeal time was tolled under Neb. Rev. Stat. § 25-213. He argues *Cole*, which the Nebraska Court of Appeals relied on when it dismissed his appeal, incorrectly interpreted Neb. Rev. Stat. § 25-213 and § 25–1931 as applied to actions pursued by non-disabled prisoners. He asks this Court to correct or vacate *Cole*'s holding because it violates Nebraska statutes and the Nebraska Constitution. He further asks this Court to decide the Court of Appeals erred when it dismissed his postconviction appeal as untimely. Filing 1 at 22.

"This court is bound by decisions of the highest state court when interpreting state law." *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010). The Nebraska Supreme Court has held "imprisonment in and of itself is not a disability entitling a prisoner to a period of exclusion from the normal time limitation of [Neb. Rev. Stat.] § 25–1931." *Cole*, 489 N.W.2d at 845. While Plaintiff claims this interpretation of Nebraska's tolling statutes

17

is incorrect, *Cole* is not subject to review and reversal by this Court. Plaintiff's requested invalidation of the *Cole* decision must be denied. As this Court explained in Plaintiff's federal habeas case, "'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Mark v. Jeffreys,* 8:24-cv-00375-JMG-PRSE, Filing 30 at 13 (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

Plaintiff asks this Court to find the Nebraska courts' denial of his postconviction motion and appeal, and his state habeas petition and appeal, were erroneous. Under the *Rooker-Feldman* doctrine, except for habeas corpus petitions challenging a conviction or term of imprisonment, lower federal courts lack subject matter jurisdiction over challenges to state court judgments. *Rooker-Feldman* applies when "the losing party in state court file[s] suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291(2005).

As curtailed by Filing 12, Plaintiff's consolidated initial complaint does not request habeas relief and asks this Court to find the Nebraska court rulings are invalid because they violate Plaintiff's due process rights. Filing 1 at 18-22; 31-35. Under *Rooker-Feldman,* this Court lacks jurisdiction to grant that requested relief.

### c. Civil Conspiracy

Plaintiff attempts to circumvent *Rooker-Feldman* by alleging the Nebraska court rulings were tainted by a conspiracy among the postconviction review defendants. Plaintiff alleges the State of Nebraska (Nebraska judges, Nebraska Attorney General, and the NDCS Director of Mental Health, in their official capacities) and Douglas County, (Douglas County Attorney, in his

18

official capacity)[8] violated 42 U.S.C. § 1985 by conspiring to ensure he was sentenced to prison and remains imprisoned. He alleges that this conspiracy denied his right to due process and supports vacating the state rulings and reopening the federal habeas case.

As to all the postconviction review defendants, Plaintiff's conspiracy allegations are vague, conclusory, speculative, and fail to allege a claim of conspiracy. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, on very similar facts, *Behl v. Peters*, 749 Fed.Appx. 852 (11th Cir. 2018), held that conspiracy allegations and related due process claims do not overcome the *Rooker-Feldman* jurisdictional bar. In *Behl,* the plaintiff alleged fifteen Florida justices and judges, the Florida Attorney General, three assistant attorney generals, and others were complicit in perpetrating fraud to deny his motion for postconviction relief as untimely. *Behl* held that since the plaintiff was requesting review of the state judge's ruling, and he sought reinstatement of his state postconviction proceedings and not release from confinement or a shorter sentence, the claim was not barred as a second or successive habeas petition. But it must be dismissed under *Rooker-Feldman* because it effectively sought to overturn state postconviction rulings, and the authority to review those rulings is vested solely in the United States Supreme Court. *Id* at 855 (citing *Exxon,* 544 U.S. at 292 (citing 28 U.S.C. § 1257)).

### d. Causal Connection

Finally, *even if* the Court were to assume the Nebraska court rulings were incorrect, the record does not support a causal connection between those rulings and the dismissal of the federal habeas petition. The federal habeas action was dismissed because it was untimely under AEDPA. Without engaging in impermissible speculation, the Court cannot assume that had

---

[8] A suit against a public employee in his or her official capacity is a suit against the public employer. *Downs v. Bush*, No. 24-1456, 2025 WL 2058352, at *1 (8th Cir. July 23, 2025) (citing *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999)).

Plaintiff's postconviction motion and appeal, and his state habeas petition and appeal, been considered and denied on the merits, Plaintiff's federal habeas petition would have been timely filed. And as the Court previously held, Plaintiff's alleged diligent pursuit of state postconviction relief does not explain or excuse his failure to timely file a federal habeas petition. *Mark v. Jeffreys*, 8:24-cv-00375-JMG-PRSE, Filing 30 at 12.

Having considered and addressed Plaintiff's arguments, the Court finds Plaintiff has failed to allege facts to support vacating the federal habeas judgment in *Mark v. Jeffreys*, 8:24-cv-00375-JMG-PRSE due to allegedly erroneous Nebraska state court rulings and decisions. Plaintiff's claim to reopen the federal habeas judgment by vacating the Nebraska court decisions upon which it may rely, (Fed. R. Civ. P. 60(b)(5)), must be denied.

## 2. Due Process Challenges to State Statutes

Plaintiff alleges he is entitled to relief under 42 U.S.C. § 1983 because the state courts' interpretation and application of the NPA in his postconviction proceedings violated his due process rights. The *Rooker-Feldman* doctrine prohibits lower federal courts from reviewing state court decisions, but a lower federal court may consider whether a statute or rule relied on by the state courts violates due process. *Skinner*, 562 U.S. at 533.

Plaintiff sues the postconviction review defendants, in their official capacities, claiming the NPA has been incorrectly interpreted, is unconstitutional, and violated his due process rights.[9] A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Campbell v. State of Iowa, Third Judicial Dist. Dept. of Corr. Serv.*, 702 F.3d 1140, 1141 (8th Cir. 2013) (quoting *Johnson v. Outboard Marine*

---

[9] A successful challenge of the NPA *may* allow Plaintiff to redo the Nebraska postconviction process, after which he could file another federal habeas action. A habeas petition on a second state postconviction ruling would not be considered a second or successive petition. *Magwood v. Patterson*, 561 U.S. 320 (2010) (holding "second or successive" applies per ruling, not per case). So, despite the final federal habeas judgment in *Mark v. Jeffreys*, 8:24-cv-00375-JMG-PRSE, Plaintiff's challenges to Nebraska's postconviction statutes are not moot.

*Corp.*, 172 F.3d 531, 535 (8th Cir.1999)). Plaintiff's claims for injunctive relief against the Nebraska District and Court of Appeals judges, the Nebraska Attorney General, and the NDCS Director of Mental Health, in their official capacities, are claims against the State of Nebraska. *See Eichelberger v. Yardley*, No. 8:23CV376, 2025 WL 1898088, at *4 (D. Neb. July 9, 2025) (official capacity claim against a Nebraska judge is a claim against Nebraska); *Sundquist v. Nebraska*, 122 F. Supp. 3d 876 (D. Neb. 2015), aff'd, 692 F. App'x 800 (8th Cir. 2017) (official claim against Nebraska Attorney General and Chief Medical Officer and Director of NDHHS's Division of Public Health is a claim against Nebraska). Plaintiff's claim against the Douglas County Attorney, in his official capacity, is a claim against Douglas County. *See e.g., Parsons v. McCann*, 138 F. Supp. 3d 1086 (D. Neb. 2015) (county attorney's offices and police department); *Winslow v. Smith*, 672 F. Supp. 2d 949, 964 (D. Neb. 2009) (sheriff's and county attorney's offices).

When seeking § 1983 recovery from a state or county, a plaintiff must identify a governmental policy or custom that caused the plaintiff's alleged injury. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (claim against state); *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) (claim against municipality). The "policy or custom" requirement applies to both cases for recovery of damages, and cases demanding prospective relief, such as an injunction or a declaratory judgment. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 31 (2010). Plaintiff's consolidated initial complaint does not allege any facts showing a Douglas County policy or custom violated his constitutional rights. Plaintiff's claims against the Douglas County Attorney, in his official capacity, must be dismissed for failure to state a claim.

The Eleventh Amendment generally prohibits suits in federal court by a citizen of a state against his state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). However, under *Ex Parte Young*, a private party can sue a state officer in his official capacity to enjoin a prospective action that

would violate federal law. *Ex Parte Young,* 209 U.S. 123 (1908). This right to enjoin a state official does not give federal courts "the power to restrain a court from acting in any case brought before it," *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 912 (8th Cir. 2022) (quoting *Ex Parte Young*, 209 U.S. at 163), and it does not permit official capacity claims against state judges performing judicial duties. Plaintiff's official capacity claims against District Judges Masteller and Schreiner, and the unnamed judges of the Nebraska Court of Appeals are therefore barred by Eleventh Amendment immunity.[10]

Plaintiff's official capacity claims against the Nebraska Attorney General and the NDCS Director of Mental Health may be subject to the *Ex Parte Young* exception to Eleventh Amendment immunity *provided* the Court also finds these defendants have "some connection with the enforcement" of the challenged act. *Reprod. Health Servs. of Planned Parenthood v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (citing *Ex parte Young*, 209 U.S. at 157)). The connection between the state official and the challenged statute need not be a primary authority to enforce the challenged law. *Balogh v. Lombardi*, 816 F.3d 536, 546 (8th Cir. 2016) (citing *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011)).

### a. Challenges to the NPA as violating Nebraska State Law

The NDCS Director of Mental Health, in her official capacity, has no direct or indirect connection with enforcement of the NPA, so she has Eleventh Amendment immunity for Plaintiff's claims challenging its constitutionality. In contrast, under Nebraska law, the Attorney General has broad powers to enforce the Nebraska Constitution and statutes and therefore has "some connection with the enforcement" of the NPA. So, Plaintiff's suit for equitable relief falls within the *Ex. Parte Young* exception to Nebraska's Eleventh Amendment immunity. The Nebraska Attorney General, in his official

---

[10] Irrespective of the relief requested, judicial immunity would bar Plaintiff's claims against the judicial defendants, in their individual capacities. Plaintiff's allegations do not overcome that immunity. *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 759 (8th Cir. 2019).

capacity, may be sued on Plaintiff's claim that the NPA violates the Due Process Clause.[11] *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006), abrogated on other grounds by *Obergefell v. Hodges*, 576 U.S. 644, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015) (citing Neb. Const. Art IV, § 6; Neb.Rev.Stat. § 84–731). *See also, State v. Sutton*, 319 Neb. 581, 599, 24 N.W.3d 43, 60 (2025) (citing Neb. Sup. Ct. R. § 2-109 (E) and holding the Nebraska Attorney General must receive notice of any lawsuit asserting that a Nebraska statute is unconstitutional on its face or as applied).

Among his several requests for relief, Plaintiff asks the Court to declare the meaning and appropriate application of several statutes within the NPA. Specifically, he demands an order requiring strict adherence to Nebraska's procedures for postconviction initial review, Neb. Rev. Stat. § 29-3001(2); and declaring Neb. Rev. Stat. § 29-3001(3) permits successive postconviction motions at the discretion of the lower court; Neb. Rev. Stat. § 29-3001(4) is void because it eliminates the equity jurisdiction of state courts to void their own orders and decisions at any time and in any proceeding; and the NPA supplants or restricts the right to state habeas relief as secured under the Nebraska Constitution.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff requests an order declaring the meaning and correct application of Nebraska statutes in accordance with Nebraska's Constitution and legislation. These requests seek a federal court interpretation of Nebraska law, not a declaration of rights arising under federal law. As such, Plaintiff's requests to interpret the NPA

---

[11] This case is before the Court on initial review, so none of the defendants have been served and their positions are not currently before the Court. However, for the purposes of completing the requirements of 28 U.S.C. § 1915A, the Court will assume that if challenged, the Nebraska Attorney General would, respond to Plaintiff's allegations, defend the validity of the NPA. *Minnesota RFL Republican Farmer Lab. Caucus v. Moriarty*, 108 F.4th 1035, 1037 (8th Cir.), cert. denied, 145 S. Ct. 549, 220 L. Ed. 2d 205 (2024) ("*Ex parte Young* only applies to officials who threaten and are about to commence civil or criminal proceedings to enforce unconstitutional policies.").

under Nebraska law are not properly before this court in an action for recovery under 42 U.S.C. § 1983.

### b. Federal Due Process Challenge to the NPA

Plaintiff alleges his federal due process rights were violated by the requirements of the NPA and its application to his case. He claims he is entitled to an order declaring his due process rights in the state postconviction proceedings were violated and he is entitled to repeat those proceedings, and he seeks an order enjoining the postconviction review defendants from enforcing the NPA.

A state cannot deprive a person of liberty without due process of law. U.S. Const., Amdt. 14, § 1; accord Amdt. 5. However, "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009). After a valid conviction, a criminal defendant has been constitutionally deprived of his liberty and has only a "limited [liberty] interest in postconviction relief." *Osborne*, 557 U.S. at 69.

The right to due process requirements in pre- and post-conviction proceedings are not the same. Given the limited liberty interest at stake, a state has "more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id*. When a state enacts a process for those seeking relief from convictions, due process does not dictate the precise form of that assistance. *Id*. (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 559 (1987)). "Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id*.

The "Nebraska Postconviction Act provides that postconviction relief is available to 'a prisoner in custody under sentence' who seeks to be released on the ground that there was a denial or infringement of his constitutional rights such that the judgment was void or voidable." *State v. York*, 278 Neb. 306, 770

24

N.W. 2d 614 (2009) (quoting Neb. Rev. Stat. § 29-3001). The Act establishes the procedure through which postconviction relief can be requested. The incarcerated person must file a verified motion in the court which imposed the sentence, and the motion must state the grounds relied upon and the relief requested. Neb. Rev. Stat. § 29-3001; *State v. Gunther*, 768 N.W.2d 453, 456 (Neb. 2009). The motion requesting postconviction relief is subject to a one-year statute of limitations, as more specifically described in Neb. Rev. Stat. § 29-3001(4).

Plaintiff filed his verified motion, but it was denied without an evidentiary hearing. He claims he lacked notice of the oral argument on the motion and the denial of his motion without an evidentiary hearing violated due process. An inmate is not subjected to a fundamentally unjust process merely because he lacked advance notice of the oral argument on his motion. As to the evidentiary hearing, under the NPA, "an evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the U.S. or Nebraska Constitution" *Id.* (citing *State v. Jim*, 747 N.W.2d 410 (Neb. 2008)). However, when the motion for postconviction relief "alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required." *Id.* The NPA's limitations on evidentiary hearings, which are analogous to those in federal postconviction proceedings under 28 U.S.C. § 2255, do not violate the due process clause. *Weiland v. Parratt*, 530 F.2d 1284, 1288 (8th Cir. 1976) ("A state has no constitutional duty to provide postconviction remedies or hearings. . .").

The district court's order granting or overruling a motion for postconviction relief is deemed a final judgment, and it can be appealed for review by the Nebraska appellate courts. Neb. Rev. Stat. § 29-3002. Plaintiff alleges his rights were violated when his appeal was dismissed as untimely,

25

arguing the interpretation of Neb. Rev. Stat. § 25–1931 as stated in *Cole* deprived him of due process. *Cole* held that "imprisonment in and of itself is not a disability entitling a prisoner to a period of exclusion from the normal [30-day] time limitation" for filing a postconviction appeal. Plaintiff argues that limiting a prisoner's postconviction appeal time to 30 days is a due process violation. The Court disagrees. Applying a 30-day appeal deadline to postconviction appeals does not offend any fundamental principle of justice.

The NPA affords prisoners the right to raise claims before a judge. The Act places reasonable time limits on pursuing postconviction relief and provides for evidentiary hearings when, upon consideration of the allegations and court records, issues of fact must be decided. And if an adverse judgment is entered, the prisoner can appeal the decision for further review. In the context of requests for postconviction relief, there is "slim room for [a] prisoner to show that the governing state law denies him procedural due process." *Skinner*, 562 U.S.at 525. Plaintiff has failed to thread that needle. The NPA, on its face, does not violate the U.S. Constitution.

Plaintiff alleges his due process rights were violated by the state postconviction courts' application of the NPA to his claims. In accordance with the Act, Plaintiff filed a motion for postconviction relief, participated in an oral argument on the motion and while he failed to timely do so, had an opportunity to appeal the adverse decision. Plaintiff claims he was entitled to an evidentiary hearing regarding his post-appeal GAD diagnosis. But his mental health issues were raised on direct appeal, and his consolidated initial complaint does not plausibly explain how having a formal diagnosis of GAD could change the outcome of his criminal case.

Plaintiff has failed to state a claim that the NPA, on its face, violates the Due Process Clause, or that it did so as applied to his case, Plaintiff's claims against the Nebraska Attorney General, in his official capacity, must be dismissed.

### 3.  Claim against the NDCS Director of Mental Health

Liberally construed, Plaintiff claims the NDCS Director of Mental Health, in her official capacity, has denied Plaintiff's request for a full mental health evaluation pursuant to a policy prohibiting such evaluations if they may, in addition to addressing mental health issues, be used as evidence in postconviction proceedings. To state this claim for injunctive relief, Plaintiff must allege facts showing (1) his requested mental health evaluation is being denied pursuant to a state prison policy, (*Hafer,* 502 U.S. at 25 (the state's "policy or custom" must have played a part in the violation of federal law)); (2) the NDCS Director of Mental Health, in her official capacity, has "some connection with the enforcement" of that policy, (*Ex Parte Young*, 209 U.S. at 157); and (3) withholding the evaluation violates Plaintiff's constitutional rights in a manner that injures him, (*McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018)); *Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Dep't of Pub. Welfare*, 602 F.2d 150, 154 (8th Cir. 1979) (holding the speculative nature of threatened harm from a state policy supports the denial of injunctive relief).

For the purposes of this initial review, the Court will assume the NDCS Director of Mental Health, in her official capacity, enforces policies on whether and when mental health testing is provided to inmates. Liberally construed, the consolidated initial complaint alleges NDCS will not provide mental health evaluations for diagnostic reasons if they could also be used for legal purposes. To prove this policy violates Plaintiff's constitutional rights, he must allege he has an objectively serious mental health need and because of the policy, he is not receiving necessary care and treatment, resulting in injuries. *Dalen v. Harpstead*, 123 F.4th 900, 904 (8th Cir. 2024).

The consolidated initial complaint alleges Plaintiff needs a mental health evaluation for his legal case, but factual allegations of any ongoing mental health problems or symptoms are sparce, at best. He alleges he has

GAD and believes he has OCD and C-PTSD, but alleging these diagnoses, standing alone, does not sufficiently allege an objectively serious medical need. *Id.* (allegations of antisocial personality disorder, narcissistic personality disorder, and chemical dependency were insufficient to allege a serious mental health need). Plaintiff alleges he had severe anxiety upon imprisonment, for which he was prescribed Zoloft, and the Zoloft prescription was increased when he arrived at TSCI. Plaintiff does not allege facts indicating Zoloft has insufficiently addressed his mental health issues or what mental health symptoms remain. He has failed to allege facts showing a full mental health evaluation is needed to diagnose and treat any objectively serious mental health problems, or that the alleged policy denying the evaluation violates his constitutional rights.

Plaintiff has failed to state a claim against the NDCS Director of Mental Health, in her official capacity, for enforcing an alleged policy of prohibiting mental health evaluations if they would be useful for both treatment and postconviction litigation.

### B. Plaintiff's Claims against the TSCI Defendants

Plaintiff's claims against the TSCI defendants, in their official capacities, are claims against the State of Nebraska. Plaintiff has not alleged any state policy or custom responsible for the First Amendment retaliation alleged in the consolidated initial complaint. His claims are barred by the Eleventh Amendment. Plaintiff's claims against Sergeant Benjamin and Case Manager Binnick, in their official capacities, must be dismissed.[12]

---

[12] Injunctive relief is also unavailable from Binnick and Benjamin, in their individual capacities. To obtain injunctive relief, Plaintiff must allege irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 501 (1974)). And to prove standing, Plaintiff must show he faces a threat of injury that is 'actual and imminent, not conjectural or hypothetical.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiff is no longer housed at TSCI. So, he cannot show that he faces any real or immediate, "certainly impending," or "substantial risk" of future First Amendment retaliation from the TSCI defendants. *Minnesota Chapter of Associated Builders & Contractors, Inc. v. Blissenbach*, 155 F.4th 1015, 1020

## C. Appointment of Counsel

Plaintiff requests appointed counsel. Filing at 11. "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011).

The Court has carefully reviewed Plaintiff's filings and concludes his case must be dismissed. There is no need to appoint counsel.

## V. CONCLUSION

The Court is required to dismiss a complaint, or any portion of it, that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A. Plaintiff's case is dismissed as follows.

- Plaintiff's request to vacate, amend, or reopen the federal habeas judgment in *Mark v. Jeffreys,* 8:24-cv-00375-JMG-PRSE is denied.
- Plaintiff's claims against District Judges Masteller and Schreiner, and the unnamed judges of the Nebraska Court of Appeals are dismissed as barred by Eleventh Amendment immunity.
- Plaintiff's claim for a declaration reversing the state court rulings in Plaintiff's state postconviction and habeas proceedings are dismissed under *Rooker-Feldman* for lack of subject matter jurisdiction.
- Plaintiff's requests for a federal court interpretation of the validity, meaning, and appropriate application of the NPA under Nebraska law, and to vacate or reverse the Nebraska Supreme Court's interpretation of

---

(8th Cir. 2025) (citing *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153–55 (2010)).

the applicable statute of limitations in Nebraska postconviction proceedings (see *Cole v. Kilgore*, 489 N.W.2d 843 (Neb. 1992)), are dismissed for lack of subject matter jurisdiction.

- Plaintiff's claim that the Nebraska Postconviction Act violates the Due Process Clause, on its face or as applied to Plaintiff, is denied.

- Plaintiff's claim that an alleged policy of denying full mental health evaluations if they could be used for not only treatment, but also legal purposes, is denied for failure to state a claim.

- Plaintiff's claims against the Douglas County Attorney Anthony Clowe, the Nebraska Attorney General Mike Hilgers, and NDCS Director of Mental Health Elizabeth Arterberry, in their official capacities, are dismissed for failure to state a claim.

- Plaintiff's claims against Sergeant Benjamin and Case Manager Binnick, in their official capacities, are dismissed for failure to state a claim.

Accordingly,

IT IS THEREFORE ORDERED:

1.    As requested in Filing 12:

  a.  All claims against all defendants, in their individual capacities, are voluntarily dismissed.

  b.  All claims against Molly Keane and Leslie Cavanaugh, in their official capacities, are voluntarily dismissed.

  c.  All claims for recovery of damages are voluntarily dismissed.

  d.  All claims to vacate or set aside Plaintiff's conviction and sentence are voluntarily dismissed.

2.    The Clerk of Court shall modify the Court's docket sheet to reflect that the defendants are Sergeant Benjamin, NDCS Staff at TSCI; Case

Manager Binnick, NDCS Staff at TSCI; District Court Judge James Masteller, Fourth Judicial District; District Court Judge Rick Schreiner, First Judicial District; unnamed Judges of the Nebraska Court of Appeals; Douglas County Attorney Anthony Clowe; Nebraska Attorney General Mike Hilgers; and NDCS Director of Mental Health Elizabeth Arterberry, all in their official capacities only.

3.    Plaintiff's motion to amend formatting, Filing 10, is granted.

4.    Plaintiff's motion for an injunction, tort relief, and appointment of counsel, Filing 11, is denied.

5.    This matter is dismissed without prejudice.

6.    A separate judgment will be entered.

Dated this 26th day of March, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

31